UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| David Vanderkipp,<br><br>    Plaintiff<br>v.<br><br>Premium Waters, Inc.,<br><br>    Defendant | Case No.: 2:24-cv-00920-JAD-BNW<br><br>**Order Granting Defendant's Motion for Summary Judgment and Closing Case**<br><br>[ECF No. 18] |

    David Vanderkipp served as Regional Director of Plant Operations for Premium Waters Inc. until his termination in 2022. He sues his former employer under Title VII of the Civil Rights Act of 1964 for retaliation and discrimination, alleging that his supervisor, John Trojacek, retaliated against him for reporting Trojacek's friend, another employee named Gary Green, to the company's human-resources department for racially discriminatory hiring practices. Premium Waters moves for summary judgment. I grant Premium Waters' motion as to Vanderkipp's retaliation claim because the record contains no evidence on which a reasonable juror could find that Trojacek knew that Vanderkipp was involved in Green's investigation, let alone that he was terminated in retaliation for it. To the extent that Vanderkipp asserts a discrimination claim, he fails to establish a prima facie case, so summary judgment is granted on that claim, too. With no claims remaining, I enter judgment for the employer and close this case.

**Background**

    Vanderkipp alleges that he was working as a production manager for Premium Waters[1] when the company assigned him to assist a team that was investigating racially discriminatory

---

[1] ECF No. 18 at 8.

hiring practices by Gary Green.[2]  That investigation led to Green's termination in October 2021.[3]  Premium Waters then promoted John Trojacek to Senior Vice President of Supply Chain and created three Regional Director of Plant Operations positions reporting to him.[4]  Two directors would oversee four plants each; the third would oversee three.[5]  Vanderkipp got the three-plant role in January 2022.[6]

Vanderkipp alleges that from April to October 2022, Trojacek began to "verbally harass [him], make objectively untruthful statements about [him], [] excessively scrutinize [him] in front of his peers, and claim that [he] caused problems that did not occur."[7]  He avers that he reported the conduct to the human-resources personnel but that no action was taken.[8]  Then, in October 2022, Trojacek fired Vanderkipp.[9]  That same day, Green texted Vanderkipp, "Ain't Karma a bitch."[10]

The parties vigorously dispute the reason that Vanderkipp was let go.  Vanderkipp theorizes that Trojacek was friends with Green and fired him in retaliation for his "integral role

---

[2] Premium Waters denies that Vanderkipp played any role in the investigation, though it does not dispute that the investigation occurred.  ECF No. 18 at 9.  And although the parties have widely disparate characterizations of various events, those conflicting accounts and perceptions don't factor into my ultimate decision.

[3] ECF No. 25 at 4.

[4] *Id.* at 4.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 5.

[8] *Id.*

[9] *Id.*

[10] *Id.*; ECF No. 25-2 at ¶ 8.

in" Green's termination one year earlier.[11]  So Vanderkipp asserts claims for retaliation and discrimination.[12]

**Discussion**

**A.     Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[13]  If the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[14]  But "mere speculation cannot raise an issue of fact."[15]  The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[16]  The court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[17]

---

[11] ECF No. 25 at 15.

[12] ECF No. 1.  Vanderkipp's original complaint also contained a state-law claim for sexual harassment based on his sexual orientation.  *Id*. at 5–6, ¶¶ 29–33.  He withdraws that claim in his summary-judgment response, averring that its inclusion was a "scrivener's error."  ECF No. 25 at 4 n.1.  So I deem the harassment claim voluntarily abandoned.

[13] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[14] *Id.* at 323.

[15] *Emeldi v. Univ. of Or.*, 698 F.3d 715, 728 (9th Cir. 2012).

[16] *Celotex,* 477 U.S. at 322.

[17] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

**B.    Vanderkipp cannot establish a prima facie case of retaliation.**

To establish a claim for employment retaliation under Title VII, a plaintiff must show (1) that he was involved in a protected activity, (2) that he was subjected to an adverse employment action, and (3) that there is a causal link between the protected activity and the adverse action.[18]

Under Title VII, retaliation claims are subject to a but-for causation standard, which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."[19]  On summary judgment, causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision."[20]  But a plaintiff must still put forth evidence from which a reasonable factfinder could conclude that the decision-maker knew about the protected activity.[21]

Premium Waters contends that that no genuine dispute exists over whether Trojacek knew that Vanderkipp participated in or reported the investigation involving Gary Green.[22]  It argues that Vanderkipp's causation theories are entirely speculative—the only "links" between his alleged protected activity and the later adverse actions are (1) a text message from Green

---

[18] *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

[19] *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362–63 (2013).

[20] *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006) (quoting *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)).

[21] *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982); *Raad v. Fairbanks N. Star Borough Sch. Dist.,* 323 F.3d 1185, 1197 (9th Cir. 2003).

[22] ECF No. 18 at 15–17.

stating, "Ain't Karma bitch," and (2) conjecture that Trojacek and Green were friends.[23]  Neither, in its view, supports a reasonable inference that Trojacek knew and then acted because of Vanderkipp's involvement in the investigation.  Because an employer's knowledge of the protected activity is essential to causation, Premium Waters maintains that speculation of that knowledge cannot create a genuine factual dispute.[24]

Vanderkipp argues that he can establish causation based on a temporal-proximity theory because Green was aware of his involvement in investigating Green's hiring practices, and Vanderkipp's termination happened shortly after that investigation.[25]  Green did not terminate Vanderkipp, Trojacek did.[26]  So even assuming that Vanderkipp's termination a full year after Green's could be characterized as proximate, Vanderkipp must offer more than speculation that Trojacek knew of Vanderkipp's involvement in the investigation.

In his declaration, Vanderkipp offers two theories to show Trojacek's knowledge.  He first suggests that because Green knew of his role in the investigation—and because Green and Trojacek were friends—Trojacek must have known, too:

> 8. On the same day as his termination, I was texted by the former Plant Manager, Mr. Green, that read "Ain't Karma a bitch." See Exhibit 6.  Mr. Green must have been made aware of my termination and **it is suspected** that Mr. Green made was aware of my termination by Mr. Trojacek.[27]

---

[23] *Id.*

[24] ECF No. 27 at 5.

[25] ECF No. 25 at 13.

[26] Vanderkipp concedes that Trojacek was the decisionmaker.  ECF No. 18 at 10, ¶ 19 (Premium Waters' statement of undisputed material facts) ("Mr. Trojacek had sole decision-making authority over which position to eliminate."); ECF No. 25 at 6 (Vanderkipp's response to motion) ("I do not dispute paragraph[]. . .19 . . . .").

[27] ECF No. 25-2 at 3, ¶ 8 (emphasis added).

5

> 21. Mr. Trojacek admits that he maintained a relationship with Mr. Green after his dismissal from the company and had at least some texts and communications. He then admitted to deleting those texts.[28]

There are two reasons that this theory does not create a genuine issue of fact to preclude summary judgment. It is based on pure speculation that Green learned of Vanderkipp's termination from Trojacek, and speculation is not admissible evidence.[29] And even if Trojacek and Green were friends, that fact does not give rise to an inference that Trojacek knew of Vanderkipp's role in the Green inquiry, let alone that he fired Vanderkipp to retaliate for what happened to Green a year earlier.

The deleted texts don't amount to an issue of fact either. Vanderkipp vaguely speculates that there could have been text messages about the investigation, and they were deleted, too.[30] But he identifies no evidence that such messages ever existed and offers no developed spoliation argument either. The only evidence about what these phantom deleted texts may have been about is Trojacek's deposition testimony. Trojacek testified that his only post-termination communication with Green was about deer at Green's cabin,[31] and that message was later deleted.[32] Vanderkipp's mere conjecture about what else might have existed and been deleted does not create a genuine issue of fact to support causation.[33]

---

[28] *Id.* at 8, ¶ 21.

[29] *See Singh v. I.N.S.*, 292 F.3d 1017, 1020–21 (9th Cir. 2002).

[30] ECF No. 25 at 17.

[31] ECF No. 25-5 at 4 (excerpts from John Trojacek's deposition).

[32] *Id.*

[33] *See Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997) ("A conclusory,

Vanderkipp's second theory stems from an HR meeting that he contends occurred a month after Green's termination. Vanderkipp declares:

> 21.   Sandra Navaraz made a public statement outlining the termination of Mr. Green, including my involvement in it. Each HR Manager from almost every site attended this Conference along with the HR Generalists and Assistants. There was no Non-Disclosure Agreement given for the group and no attempt was made to keep this information confidential effectively making the story general knowledge within the company. Ms. Copiskey stated this conference did not occur in her deposition.[34]

What's more important about this meeting story is what's missing from it. Vanderkipp does not state that Trojacek was at this alleged meeting, so this story is not evidence that Trojacek was made aware of the things that were said at it. Even if I could assume that Trojacek became aware of what happened at this meeting, the vague description that Navaraz made a statement "outling the termination of Mr. Green, including [Vanderkipp's] involvement in it" is too vague to establish any useful detail. Vanderkipp also does not say how he knows this meeting happened such that this court can find that he has personal knowledge that it even happened and thus could overcome a hearsay objection at trial. And when deposed, HR employee Betsy Copiskey testified that she was not aware of any conference about Green's termination,[35] calling into question whether such a meeting ever even happened.

---

self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

[34] ECF No. 25 at 8, ¶ 21.

[35] ECF No. 25-4 at 3.

7

Because Vanderkipp has not created a genuine issue of fact that Trojacek knew of his role in Green's investigation, he cannot establish the causation element for his retaliation claim.[36] Premium Waters is therefore entitled to summary judgment on this retaliation claim.

**C.      Vanderkipp cannot establish a prima facie case of discrimination.**

The complaint is less than clear about the claims it contains. Several theories are lumped into single causes of action.[37] But in his opposition to the motion for summary judgment, Vanderkipp says "This is a discrimination and retaliation case."[38] To the extent Vanderkipp seeks to pursue a discrimination claim, he must show that he (1) belongs to a protected class, (2) was qualified for his job, (3) was subjected to an adverse employment action, and (4) similarly situated employees not in his protected class received more favorable treatment.[39] Premium Waters moves for summary judgment on any discrimination claim, arguing that Vanderkipp has not asserted that he was a member of a protected class.[40]

Vanderkipp has not established that he can support any element of a discrimination claim. He never alleges or argues that he is a member of a protected class. Instead, he focuses on his participation in Green's investigation as a "protected activity" under Title VII,[41] which is relevant to a retaliation claim, but not a discrimination one. This also suggests that the "discrimination" in this case isn't a claim of discrimination, but instead just context for the retaliation claim: Green was being investigated for discriminatory hiring practices, and

---

[36] So I need not and do not address the other elements of his retaliation claim.

[37] *See* ECF No. 1 at 4–5.

[38] ECF No. 25 at 4.

[39] *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006).

[40] ECF No. 27 at 2.

[41] ECF No. 1 at 5, ¶ 25; ECF No. 25 at 4, n.1.

Vanderkipp's involvement in that investigation was the alleged protected activity.  Because it does not appear that Vanderkipp intends to pursue a true claim for discrimination, and the record is entirely devoid of evidence to support one, I grant Premium Waters' summary-judgment motion on any such discrimination claim.

**Conclusion**

IT IS THEREFORE ORDERED that Premium Waters Inc.'s motion for summary judgment **[ECF No. 18] is GRANTED**.  The Clerk of Court is directed to **ENTER FINAL JUDGMENT** in favor of the defendant and against the plaintiff and **CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
November 3, 2025